**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* HENRY B. HELLER,<br><br>                    *Plaintiffs,*<br><br>v.<br><br>GUARDIAN PHARMACY, LLC and GUARDIAN PHARMACY OF ATLANTA, LLC,<br><br><br>                    *Defendants.* | Civil Action File No.:<br><br>1:18-cv-03728-SDG<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF-RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANT GUARDIAN PHARMACY, LLC's MOTION TO DISMISS

Relator Henry B. Heller respectfully submits his Response in Opposition to Defendant Guardian Pharmacy, LLC's Motions to Dismiss.  Relator also incorporates by reference herein the entirety of his Response in Opposition to Guardian Pharmacy of Atlanta, LLC's Motion to Dismiss.

Mr. Heller's Amended Complaint plainly sets forth a kickback scheme engineered and executed by the Defendants, including the direct involvement of Defendant Guardian Pharmacy, LLC, in violation of the Anti-Kickback Statute and the False Claims Act.  Hence, this is not a case in which a company is alleged to be

1

responsible simply because it is a parent of a subsidiary entity accused of wrongdoing.  Indeed, read fully and in the proper light, the Complaint specifically alleges Guardian Pharmacy, LLC's control, knowledge, and direct involvement in the illegal kickbacks of Guardian Pharmacy of Atlanta, LLC ("Guardian Atlanta"). The Complaint also alleges sufficient facts to state a claim for piercing the corporate veil.  The motion thus is wholly without merit and should be denied.

## I.   FACTUAL SUMMARY

The operative Complaint defines the term "Guardian" to refer, collectively, to both Defendants Guardian Pharmacy, LLC and Guardian Pharmacy of Atlanta, LLC.[1]  ECF 24 ¶ 1.  Defendant Guardian Pharmacy is a private company, founded in 2004, soon after Congress substantially expanded Medicare coverage for prescription drug orders with the passage of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.  *Id*. ¶¶ 48, 121.

Guardian Pharmacy and Guardian Atlanta share the same corporate address as their principal place of business.  *Id*. ¶¶ 16-17.  Guardian Atlanta was formed in 2010 when Guardian Pharmacy's Executive Vice President and Chief Financial

---

[1] These Defendants are individually referred to as "Guardian Pharmacy" and "Guardian Pharmacy of Atlanta" in the Amended Complaint.

Officer, David Morris, signed and filed the Articles of Organization for Guardian

Atlanta with the Georgia Secretary of State.  *See id*. ¶ 138.[2]

### A.    *Home Office Control of Subsidiaries*

With its "Home Office" or headquarters in Atlanta, Georgia, ECF 24 ¶¶ 121,

124, Guardian Pharmacy grew rapidly through acquisitions and start-ups and now

owns and operates pharmacies in 37 locations and 18 states across the United

States.  *Id.* ¶ 122.  It is the majority owner of its subsidiaries, including Guardian

Atlanta, and refers to them as "Partner Pharmacies," that is, "local entities that are

**operated jointly** by Guardian Pharmacy and a local management team."  *Id.*

¶¶ 18, 123, 125 (emphasis added)).

Guardian is now the third-largest institutional pharmacy in the United States,

with over $550 million in annual revenues from filling more than 12 million

prescriptions for over 100,000 residents of assisted living communities, personal

---

[2] *See also* Exhibit A, Certificate and Articles of Organization for Guardian
Atlanta, available at https://ecorp.sos.ga.gov/BusinessSearch/BusinessFilings.  The
Court is asked to take judicial notice of Mr. Morris' filing of the Articles of
Organization which is "a fact that is not subject to reasonable dispute because" it
"can be accurately and readily determined from sources whose accuracy cannot
reasonably be questioned." Fed. R. Evid. 201(b)(2).  A court "may [] take judicial
notice of publicly filed documents at the motion to dismiss stage without
converting a Rule 12(b)(6) motion to a Rule 56 motion." *U.S. ex rel. Saldivar v.
Fresenius Med. Care Holdings, Inc*., 906 F. Supp. 2d 1264, 1271 (N.D. Ga. 2012)
(citing *Halmos v. Bomardier Aerospace Corp*., 404 Fed. App'x 376, 377 (11th Cir.
2010)).

care homes, skilled nursing homes, and other facilities, many of whom are beneficiaries of federal health care programs such as Medicare and TRICARE. ECF 24 ¶ 127.  The executive team for Guardian Pharmacy focuses on a growth and profit strategy, such that "the officers of the company aggressively promote sales growth to increase the number of residents under contract with Guardian, *i.e.*, the number of patients who fill prescriptions with Guardian."  *Id.* ¶ 129.

Guardian Pharmacy "**controls the operations of its Partner Pharmacies**, including Defendant Guardian Pharmacy of Atlanta." ECF 24 ¶ 125 (emphasis added).  Guardian Pharmacy develops national and regional sales strategies for the entire company, trains "all sales representatives and other employees, and exerts control over the **billing process, contracting, finance and legal functions** for the Partner Pharmacies."  *Id.* ¶ 126 (emphasis added).  "Guardian Pharmacy **controls the overall operations and strategic direction** of Guardian . . . Atlanta," one of its largest Partner Pharmacies.  *Id.* ¶¶ 138-39 (emphasis added).

## B.    *Direct Involvement in Guardian Atlanta Operations*

Guardian's Home Office pressured Guardian Atlanta's President Mathew Hopp to memorialize agreements with assisted living communities and personal care homes in written contracts and provided a standard form contract designating Guardian as the "preferred pharmacy" for the facility.  ECF 24 ¶¶ 195-97.  That

form contract expressly described the Anti-Kickback Statute and stated that
"Operator will pay for" consulting pharmacist services at cost and "never below
those costs."  *Id.* ¶ 210.  But the contract had a form face sheet with "Confidential
Pricing Terms" promising just the opposite:  Guardian furnishes "Pharmacy
Consulting Services" "***Quarterly at no charge***."  *Id.* ¶ 205 (emphasis added).
Guardian Atlanta used these terms, confidentially providing free consulting
services, in a preferred pharmacy contract with Magnolia Senior Living in
Loganville, Georgia.  *Id.* ¶¶ 200, 204-05.  The contract also expressly provides for
free in-service training.  *Id.* ¶¶ 208-09, 212.

Guardian Atlanta thus "offered and continues to offer illegal inducements to
attract or retain its customers" per Guardian Pharmacy's standard business
practices.  ECF 24 ¶¶ 148-49.  In violation of the Anti-Kickback Statute, Guardian
did not charge facilities for quarterly consulting services (*i.e.,* medication
management audits required by Georgia law) that its pharmacists and nurses
provided for the facilities onsite at their locations.  *Id.* ¶ 150.  Guardian further
provided free education and skills checks for the staff of Guardian customers, and
free installation of electronic medication administration records systems (or
"eMARs") for assisted living communities and personal care homes that selected
Guardian as their preferred pharmacy.  *Id.* ¶ 151.  With Guardian Pharmacy's

5

knowledge, Guardian Atlanta offers and provides such services to its customers for free, or below fair market value, in order to obtain and retain coveted "preferred" pharmacy status from owners and operators of the facilities so that Guardian can bill federal healthcare programs for the residents' prescription drug medications. *Id.* ¶ 153.

### C.    National Sales Meetings

2017.  Guardian Pharmacy's knowledge of the scheme is further demonstrated by its national sales training meetings, attended by executives and sales personnel from across the United States.  At Guardian's March 2017 national sales meeting in Atlanta, attended by Guardian's senior executives and sales representatives including Relator, Bob Weir, Guardian Pharmacy's Vice President, Operations & Regulatory Support, joked about charging for consulting services. ECF 24 ¶¶ 188-91.  Relator was concerned enough to raise this issue with Kendall Forbes, Guardian Pharmacy's Executive Vice President for Sales & Operations, at the sales meeting, and reminded Mr. Forbes that federal guidelines require pharmacies to charge for such services, also known as audits.  *Id.* ¶¶ 192-93.

2018.  Guardian's national sales meeting in October 2018 included a power point presentation that criticized other pharmacies for "lacking in nursing, consulting, eMAR support, technology and education services," promoting the

value of those services offered by Guardian Pharmacy.  *Id*. ¶¶ 304-05.  In addition to being described in the Complaint, the presentation is attached as Exhibit C to Guardian Atlanta's Motion to Dismiss.  *See id.*; ECF 32-4, Exh. C, "Tips for Selling to a New Account," at 5, Oct. 18, 2018.

It further states that other pharmacies do not provide equipment such as "laptops, fax machines, med carts."  ECF 32-4, Exh. C at 5.  It claims that "75% of Guardian's 110,000 patients" are residents of assisted living facilities and urges the national sales team to "[e]xplain the Guardian difference" when selling to new accounts, meaning facility owners and operators.  ECF 32-4, at 3-4.  Finally, the presentation concludes with a reminder to the national sales team to "[l]og your account info, contacts, visits and activity in **Salesforce**," a centralized customer relationship management tool maintained by Guardian Pharmacy.  *Id*. at 7 (emphasis added).

## II.    LEGAL STANDARD

On a Rule 12(b)(6) motion, courts accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004).  Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim giving the defendant fair notice of the basis for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  A complaint must contain sufficient

factual matter, accepted as true, to "state a claim that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.  There

must be "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of" the claim.  *Twombly*, 550 U.S. at 545.

A complaint alleging violations of the FCA must satisfy two pleading

requirements.  First, it must provide a "short and plain statement of the claim

showing the pleader is entitled to relief."  *United States ex rel. Matheny v. Medco

Health Sol'ns, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quoting Fed. R. Civ. P.

8(a)(2)).  Second, it "must comply with Rule 9(b)'s heightened pleading standard,

which requires a party to 'state with particularity the circumstances constituting

fraud or mistake."  *Id.* (quoting Fed. R. Civ. P.9(b)).  Even under a Rule 9(b)

standard, "knowledge, and other conditions of a person's mind may be alleged

generally."  Fed. R. Civ. P. 9(b); *U.S. ex rel. Matheny v. Medco Health Sol'ns, Inc.*,

671 F.3d 1217, 1224 (11th Cir. 2012).  The "time, place, contents, and identity"

standard, is not a "straitjacket" for Rule 9(b).  *U.S. ex rel. Grubbs v. Kanneganti*,

565 F.3d 180, 187 (5th Cir. 2009).  Rule 9(b) particularity works with Rule 8 to

alert defendants to the precise misconduct charged and protect against spurious

charges.  *Matheny*, 671 F.3d at 1222; *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194,

1202 (11th Cir. 2001).  Relator's Complaint includes more than sufficient detailed

factual allegations that, when taken as true, demonstrate Guardian Pharmacy's direction, control of its partner company, Guardian Atlanta, and their joint execution of a fraudulent kickback scheme, in violation of the Anti-Kickback Statute and the False Claims Act.

## III.  ARGUMENT

The Complaint plausibly alleges Guardian Pharmacy's direct liability and facts supporting its indirect liability via veil-piercing or an alter-ego theory. Guardian Pharmacy presents three overlapping arguments.  First, selectively reading the Complaint, Guardian Pharmacy contends that its liability could only be derivative, based solely on its ownership interest in its "Partner Pharmacy," Guardian Atlanta.[3]  Second, it argues a corollary of its first argument, contending that the Complaint fails to allege Guardian Pharmacy's participation in the kickbacks or the fraudulent claims.  Finally, it contends that, in the absence of any contentions as to its participation in the kickbacks and fraud against the United States, it can only be liable under a veil-piercing theory, which it contends was not sufficiently alleged.  These contentions all fail because the Complaint provides

---

[3] Relator's Response in Opposition to Guardian Pharmacy of Atlanta, LLC's motion to dismiss details the fraudulent kickback scheme, pled to the specificity standards under Rule 9(b), as to both Guardian Defendants.  That Response is incorporated by reference and not repeated herein.

detailed allegations of Guardian Pharmacy's own participation in and control over the kickback scheme and its Partner Pharmacy, Guardian Atlanta.

### A. Guardian Pharmacy's participation, direction and control over a kickback scheme is alleged with the requisite particularity.

Guardian Pharmacy is the moving force behind the kickback scheme that it executed with its Partner Pharmacy, Guardian Atlanta, to obtain preferred provider status at facilities via unlawful kickbacks, giving it access to supply – and bill the Government for – the prescription medications of those facilities' residents. This sufficiently alleges that Guardian Pharmacy's direct involvement in the kickback scheme. *See, e.g., United States ex rel. Hockett v. Columbia/HCA Healthcare*, 498 F. Supp. 2d 25, 62-63 (D.D.C. 2007) (finding a triable issue on summary judgment in FCA case alleging parent company liability for its "direct involvement" with subsidiary in submitting false claims via instructions to obscure information on cost report submitted to Medicare, frequent communications with subsidiary, and a "larger mosaic" of corporate ties).

Here, the Amended Complaint alleges a similar "mosaic" in that Guardian Pharmacy operates as a partner with Guardian Atlanta and has intimate knowledge of its operations, as evidenced by Guardian Pharmacy's role: (1) as a majority owner; (2) as signatory on Guardian Atlanta's formation documents; (3) as the lead in developing and implementing national sales strategies, centralized sales tracking

10

through SalesForce, and uniformly training all sales representatives;[4] and (4) as supplier of the contracting, finance, and legal functions for Guardian Atlanta.  ECF 24 ¶¶ 122-26.

Relator has indisputably alleged that Guardian Pharmacy, the "Home Office" for its "Partner Pharmacy" subsidiaries is thoroughly intertwined in the operations with Guardian Atlanta, and that it developed and implemented the kickback scheme at the center of its plan to increase profits and grow customer numbers, through providing free consulting, training and eMAR services in return for preferred provider status, giving it access to residents and the ability to bill for these preferred facility residents' prescription medications.

Contrary to Guardian's arguments, this is not a case where a plaintiff is attempting to hold an individual or parent corporation responsible for a company's malfeasance simply because of an ownership interest.  *Cf. United States v. Gericare Med. Supply Inc.*, No. CIV.A.99-0366-CB-L, 2000 WL 33156443, at *8-

---

[4] Guardian Pharmacy trains all sales personnel, and even joked about billing for consulting services at a national training event.  ECF 24 ¶¶ 188-89.  Guardian Pharmacy's attempt to spin these facts as innocent statements and "subjective interpretation" improperly interprets the allegations in the light most favorable to itself on its own motion.  *See Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004) (factual allegations accepted as true and inferences drawn in plaintiff's favor).  Further, Rule 9(b) provides that "knowledge, and other conditions of a person's mind may be alleged generally."  *See U.S. ex rel. Matheny v. Medco Health Sol'ns, Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012).

*9 (S.D. Ala. Dec. 11, 2000) (dismissing individual who owned and served as officer of two corporate defendants, who was alleged to have received financial benefit from scheme and "should have known" about false claims, for failure to allege facts as to his "role in the fraud"); *U.S. ex rel. Tillson v. Lockheed Martin Corp.*, 2004 WL 2403114, at *33 (W.D. Ky. 2004) (being a parent corporation of a subsidiary that commits an FCA violation, absent "some degree of participation by the parent" insufficient to support claim against parent for subsidiary's FCA violation).

Here, Relator has alleged a plethora of facts illustrating Guardian Pharmacy's role in developing, orchestrating, and implementing the fraudulent kickbacks at the heart of the FCA and AKS violations.  *Cf. United States ex rel. Lawson v. Aegis Therapies, Inc*., Case No. 210-CV-72, 2013 WL 5816501, at *4 (S.D. Ga. Oct. 29, 2013) ("no allegations about how, when, and where Corporate Defendants were involved in the alleged fraudulent activity").  Relator seeks to hold Guardian Pharmacy accountable for its own fraudulent conduct, as detailed in the Complaint and summarized above, not simply as a "passive" owner of Guardian Pharmacy of Atlanta.  The allegations more than sufficiently allege Guardian Pharmacy's personal involvement in the kickbacks, naming names and explaining contractual terms from Guardian Pharmacy's Home Office.

Guardian Pharmacy is on notice of the precise misconduct charged.  *See Matheny*,

671 F.3d at 1222; *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.

2001).

The motion should be denied because Relator has alleged plausible Anti-

Kickback and False Claims Act violations based on Defendant Guardian

Pharmacy's conduct.

**B.     *Alternatively, Guardian Pharmacy operated Guardian Atlanta as its alter ego to implement its kickback scheme in violation of the False Claims Act.***

The Amended Complaint also alleges sufficient facts to state a plausible

claim in support of piercing the corporate veil and finding that Guardian Atlanta

was an alter ego of Guardian Pharmacy.  The federal common-law test for

corporate veil-piercing asks whether (1) "there is a unit[y] of interest and

ownership among Defendants that makes their separate personalities no longer

exist" and (2) "an inequitable result would flow from treating Defendants

separately."  *United States ex rel. Lawson v. Aegis Therapies, Inc*., No. CV 210-72,

2013 WL 5816501, at *4 (S.D. Ga. Oct. 29, 2013) (citation omitted) (dismissing

allegations that "only describe Corporate Defendants' headquarters, industry, and

relationship with each other at a high level of generality").

Evidence of a "unity of interest" was found in *United States ex rel. Powell v. American Intercontinental Univ.*, where Relators alleged that an officer of a parent company signed a program participation agreement on behalf of the subsidiary. *See* No. 1:08-CV-2277-RWS, 2016 WL 5092513, at *8 (N.D. Ga. Sept. 20, 2016). Relators also cited evidence showing a "unity of interest" because the parent was involved in hiring and firing employees of the subsidiary, provided training for its staff, and set policies and productivity goals for the subsidiary. *Id*., at *8-9 (denying parent's motion for summary judgment).

Here, Relator has alleged similar facts showing a unity of interest between Defendants. Guardian Pharmacy's Executive Vice President and CFO was responsible for the corporate formation of Guardian Atlanta, signing its Articles of Organization. *See* Exhibit A. As noted, Guardian Pharmacy exercised operational control over Guardian Atlanta, controlling functions such as contracting, finance, and legal services. ECF 24 ¶ 126. Guardian Pharmacy also provided training and tracked all customer sales in SalesForce. Thus, the first element of unity is sufficiently alleged. *See Speir v. Wal-Mart Stores, Inc.,* No 1:06-CV-0757-RLV, 2007 WL 707357, at *2 (N.D. Ga. Mar. 1, 2007) (declining to dismiss corporate defendant because "ascertaining the degree of control necessary" to establish alter ego liability "is a question of fact").

14

The second prong of the test is also met in that leaving Guardian Atlanta "saddled with the baggage" of any potential liability in this case would be "inequitable." *See Powell*, 2016 WL 5092513, at *9.  Relator's allegations of Guardian Pharmacy's direct involvement in the scheme, as shown above, are sufficient to state a plausible claim that an inequitable result would flow from treating Defendants separately.  ECF 24 ¶¶ 148-53.  Allegations that an entity used another to implement a fraudulent scheme have been found sufficient to support that failure to pierce the corporate veil would result in inequity.  *See, e.g., Century Sr. Svcs. v. Consumer Health Ben. Ass'n, Inc.,* 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011) (finding second element satisfied by allegations that related company was used "for a fraudulent purpose"); *United States ex rel. Schaengold v. Mem'l Health, Inc.*, 4:11-CV-58, 2014 WL 6908856, at *12 (S.D. Ga. Dec. 8, 2014) (second element satisfied by allegations that "corporate form was used to perpetrate some form of injustice or fraud.").

The question on the present motion is not whether Relator may ultimately prevail on a veil-piercing theory of liability, "but whether the allegations are sufficient to allow . . . discovery in an attempt to prove their allegations." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579-80 (11th Cir. 1986).  *See also Burkes v. Dylewski*, No. 1:14-CV-22079-UU, 2016 WL 9526692, at *6 (S.D. Fla.

15

May 3, 2016) ("Whether [related corporation] is directly liable for any alleged violation of the FCA, based on its own actions or under an alter ego theory, is more appropriately addressed at the summary judgment stage").

## IV.   CONCLUSION

Relator has plausibly alleged that Defendant Guardian Pharmacy violated the False Claims Act via its own conduct and, alternatively, by using co-Defendant/Partner Pharmacy Guardian Atlanta as its alter ego to effectuate the fraudulent kickback scheme.  Accordingly, Guardian Pharmacy's Motion to Dismiss should be denied.  Alternatively, should the Court find any deficiency in Relator's pleading, any dismissal should be without prejudice and with leave to amend.

Respectfully submitted this 29th day of May, 2020.

*s/ Michael J. Moore*                              *s/ Lynn M. Adam*
MICHAEL J. MOORE                          LYNN M. ADAM
Georgia Bar No. 520109                      Georgia Bar No. 002319
CHARLES W. BYRD
Georgia Bar No. 100850                      **ADAM LAW LLC**
JAY F. HIRSCH                                     125 Clairemont Avenue
Georgia Bar No. 357185                      Suite 380
KIMBERLY J. JOHNSON                     Decatur, Georgia 30030
Georgia Bar No. 687678                      (404) 324-3582
CAROLINE G. MCGLAMRY                ladam@lynnadamlaw.com
Georgia Bar No. 230832
ELIZABETH S. WHITE
Georgia Bar No. 258844

**POPE MCGLAMRY**
3391 Peachtree Road, NE, Suite 300
Atlanta, GA 30326
(404) 523-7706
efile@pmkm.com

*Attorneys for Relator Henry B. Heller*

# **CERTIFICATION**

Pursuant to N.D. Ga. L.R. 7.1(D), counsel for Plaintiff hereby certifies that this document has been prepared with Times New Roman (14 point) font, which font has been approved under L.R. 5.1(C).

> */s/ Michael J. Moore*_____
> MICHAEL J. MOORE
> Georgia Bar No. 520109

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2020, I electronically filed the foregoing

**PLAINTIFF-RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANT**

**GUARDIAN PHARMACY, LLC's MOTION TO DISMISS** with the Clerk of

Court using the Court's CM/ECF system, which will automatically send notification

of such filing to all counsel of record.

GABRIEL A. MENDEL
Assistant U.S. Attorney
600 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, S.W.
Atlanta, GA 30335
Phone: (404) 581-6000
Fax: (404) 581-6163
Gabriel.Mendel@usdoj.gov

GLENN P. HENDRIX
W. JERAD RISSLER
Arnall Golden Gregory, LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
Phone: (404) 873-8692
glenn.hendrix@agg.com
jerad.rissler@agg.com
*Attorney for Defendants*

*/s/ Michael J. Moore*
MICHAEL J. MOORE
Pope, McGlamry, Kilpatrick,
Morrison & Norwood, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 19337 (31126-1337)
Atlanta, GA 30326
(404) 523-7706
efile@pmkm.com