IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* HENRY B. HELLER, <br><br> *Plaintiffs*, <br><br> v. <br><br> GUARDIAN PHARMACY, LLC, and GUARDIAN PHARMACY OF ATLANTA, LLC, <br><br> *Defendants*. | Civil Action File No.: <br><br> 1:18-cv-03728-SDG |

**DEFENDANT GUARDIAN PHARMACY, LLC'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

**I.      INTRODUCTION**

Relator claims that Guardian Pharmacy of Atlanta, LLC ("Guardian Atlanta") violated the federal Anti-Kickback Statute ("AKS") and, by extension, the False Claims Act ("FCA"). Relator seeks to hold Guardian Pharmacy, LLC ("Guardian Pharmacy") responsible for Guardian Atlanta's alleged actions and practices. Guardian Atlanta has moved to dismiss the Amended Complaint.[1]

---

[1] *See generally* Def. Guardian Atlanta's Mot. to Dismiss, Doc. No. 32.

1

Guardian Pharmacy separately moved for dismissal for three reasons.[2] First, Relator's claims against Guardian Pharmacy are entirely derivative of, and dependent upon the success of, his claims as to Guardian Atlanta. Relator's claims as to Guardian Pharmacy fail because Relator has not stated a claim against Guardian Atlanta.[3] Second, even if Relator's Complaint did state a claim against *Guardian Atlanta*, Relator's Complaint fails to plead facts sufficient to state a claim for a violation of the FCA by *Guardian Pharmacy*.[4] Third, Relator also does not plead facts sufficient to pierce the corporate veil between Guardian Pharmacy and Guardian Atlanta.[5]

Relator's Opposition concedes that his claims against Guardian Pharmacy are limited in scope to the activities at Guardian Atlanta, but asserts that

> [R]ead fully and in the proper light, the Complaint specifically alleges Guardian Pharmacy['s] control, knowledge, and direct involvement in the illegal kickbacks of Guardian [Atlanta]. The Complaint also alleges sufficient facts to state a claim for piercing the corporate veil.[6]

Thus, as to Guardian Pharmacy's first point, Relator incorporates by reference his

---

[2] *See generally* Def. Guardian Pharmacy's Br. in Supp. of Mot. to Dismiss, Doc. No. 34-1.
[3] Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 1-2, 7-8 (incorporating by reference Guardian Atlanta's Motion to Dismiss (Doc. No. 32)).
[4] Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 7-11.
[5] Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 11-13.
[6] Pl.'s Resp. to Guardian Pharmacy's Mot. to Dismiss, Doc. No. 42 at 2.

Response in Opposition to Guardian Pharmacy of Atlanta, LLC's motion to dismiss.[7] Guardian Pharmacy hereby incorporates by reference Guardian Atlanta's Reply Brief in Support of its Motion to Dismiss.[8] As to the second and third points, despite the concession that the scope of the alleged misconduct is limited to Guardian Atlanta, Relator asserts that the Amended Complaint sufficiently pleads facts to support that Guardian Pharmacy is directly responsible[9] and also derivatively responsible through an alter-ego theory.[10] As discussed below the allegations of the Amended Complaint fall far short of the critical facts alleged in the cases upon which Relator relies.

II.   **ARGUMENT**

    **A.   The Amended Complaint does not allege Guardian Pharmacy's participation, direction, or control over a kickback scheme with the requisite particularity.**

In support of his position that he has adequately alleged Guardian Pharmacy's direct FCA liability with respect to the alleged misconduct at Guardian Atlanta, Relator relies on *United States ex rel. Hockett v. Columbia/HCA*

---

[7] Pl.'s Resp., Doc. No. 42 at 9, n.3.
[8] *See generally* Guardian Atlanta's Reply Br. in Supp. of Mot. to Dismiss, Doc. No. 48.
[9] Pl.'s Resp., Doc. No. 42 at 10-13.
[10] Pl.'s Resp., Doc. No. 42 at 13-16.

*Healthcare*.[11] In that case, after finding that the "relator has come up woefully short of the showing necessary to justify piercing the corporate veil" between Columbia/HCA and its indirect subsidiary, the Court noted that "Columbia/HCA can, however, be held liable if it was directly involved in submitting false claims or causing them to be submitted to the government."[12] The allegations there centered around the filing of a cost report, and the relator came "forward with evidence that Columbia/HCA was directly involved in the process of finalizing the cost report and billing the government."[13] The court there noted that the following evidence was not "strong" or "overwhelming," but sufficient:

- "[A] Columbia/HCA corporate official instructed an employee who was preparing the amended cost report to obscure the true nature of the cost overstatements in the original cost report."

- "Correspondence with the Medicare fiscal intermediary regarding [the subsidiary's] cost report was conducted on Columbia/HCA letterhead…, and this correspondence was a central part in consummating the fraud, and then attempting to cover it up."

- "Matney [the subsidiary's CEO] said he had been schooled in TEFRA-inflation techniques — with the intimation that these techniques were improper — at meetings for hospital executives that were organized and conducted by HCA."

---

[11] 498 F. Supp. 2d 25, 62-63 (D.D.C. 2007); Pl.'s Resp. to Guardian Pharmacy's Mot. to Dismiss, Doc. No. 42 at 10-11.
[12] *Hockett*, 498 F. Supp. 2d at 61-62.
[13] *Id.* at 62.

4

- "Matney stated that he sought approval from Columbia/HCA superiors of his actions at [the subsidiary]."
- "[C]orporate officials…regularly communicated with [subsidiary employees] regarding the GP unit's TEFRA initiative and the need to increase the TEFRA rate…."[14]

In contrast to *Hockett*'s focus on Columbia/HCA's *direct actions* with respect to the cost report at issue, Relator points generally to Guardian Pharmacy's "intimate *knowledge* of [Guardian Atlanta's] operations" generally.[15] Specifically, Relator points to Guardian Atlanta's alleged role: "(1) as a majority owner; (2) as signatory on Guardian Atlanta's formation documents; (3) as the lead in developing and implementing national sales strategies, centralized sales tracking through SalesForce, and uniformly training all sales representatives; and (4) as supplier of the contracting, finance, and legal functions for Guardian Atlanta."[16]

As explained in Guardian Pharmacy's opening brief, "Relator does not describe any of these strategies, training, or control from Guardian Pharmacy, nor does he explain how they influenced or led to the purported misconduct at Guardian Atlanta."[17] Guardian Pharmacy further pointed out that "Relator does not allege any specific facts to show that Guardian Pharmacy directed or

---

[14] *Id.* at 62-63.
[15] Pl.'s Resp., Doc. No. 42 at 10-11 (emphasis added).
[16] Pl.'s Resp., Doc. No. 42 at 10-11.
[17] Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 5, 9-11.

encouraged any of its affiliated pharmacies—not Guardian Atlanta and not any other 'Partner Pharmacies'—to violate the AKS."[18]

Relator's Opposition brief still does not point to any allegations to show Guardian Pharmacy's direct involvement in the alleged kickback scheme at Guardian Atlanta. Relator points to Paragraphs 122-126 and 188-189 of the Amended Complaint in support of his argument.[19] Paragraphs 122-126 allege that Guardian Pharmacy operates through "Partner Pharmacies" "that are operated jointly by Guardian Pharmacy and a local management team"; that it "is known as the 'Home Office'"; that it "controls the operations of its Partner Pharmacies"; and that it "develops national and regional sales strategies for the entire company, conducts training for all sales representatives and other employees, and exerts control over the billing process, contracting, finance and legal functions for the Partner Pharmacies."[20] Paragraphs 188-189 relate to allegations about statements of Guardian Pharmacy officers at a national sales meeting.[21]

---

[18] Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 6, 9-11.
[19] Pl.'s Resp., Doc. No. 42 at 10-11.
[20] Am. Compl., Doc. No. 24 ¶¶ 122-26.
[21] Am. Comp., Doc. No. 24 ¶¶ 187-93; Def. Guardian Pharmacy's Br., Doc. No. 34-1 at 5-7, 10-11.

These broad allegations with respect to Guardian Pharmacy—untethered to any alleged kickback or false claims by Guardian Atlanta—stand in stark contrast to the evidence of Columbia/HCA's direct involvement in the specific cost report giving rise to the claim that its subsidiary had violated the FCA.[22] For example, Relator does not allege that Guardian Pharmacy was involved in, or directed, any specific discussions with any assisted living community or personal care home or directed the specific terms of any agreement that Relator claims ran afoul of the AKS.[23] To the contrary, in the few allegations that allege statements by officers and directors of *Guardian Pharmacy*, Relator acknowledges that they encouraged charging for medication audits.[24] Relator alleges no more than what other courts have found to be insufficient at the pleading stage.[25]

---

[22] *Cf. Hockett*, F. Supp. 2d at 61-62.

[23] Relator asserts that Guardian Pharmacy pressured Guardian Atlanta to use written contracts. Pl.'s Resp., Doc. No. 42 at 4 (quoting Am. Compl., Doc. No. 24 ¶¶ 195-97). And he takes issue with some of the terms included in certain contracts. Pl.'s Resp., Doc. No. 42 at 4-5 (citing Am. Compl., Doc. No. 24 ¶¶ 200, 204-05, 208-10, 212). But, Relator does not allege that Guardian Pharmacy dictated the terms of any contracts. Instead, Relator points to Paragraphs 148-149 of his Amended Complaint. Pl.'s Resp., Doc. No. 42 at 5. Those Paragraphs make clear that the decisions he challenges were made by Guardian Atlanta's local management team, not Guardian Pharmacy.

[24] Am. Compl., Doc. No. 24 ¶¶ 190-93.

[25] *U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, 4:11-CV-58, 2014 WL 6908856, at *14 (S.D. Ga. Dec. 8, 2014) ("[M]ere participation in a scheme that results in an eventual submission of a false claim is not sufficient for FCA liability to lie…. [W]ithout

B.  **The Amended Complaint does not adequately allege an alter ego theory.**

In support of his argument to pierce the corporate veil, Relator relies on *United States ex rel. Powell v. American Intercontinental Univ.*[26] In that case, the "Relators allege[d] that Defendants violated the FCA when AIU executed its 2007 Program Participation Agreement ('PPA') with the Department of Education ('DOE')."[27] In considering the motion of AIU's parent company, CEC, the court noted that "CEC's Motion centers on establishing its corporate separateness, so the facts relevant to that Motion are those showing the relationship between CEC and AIU."[28] In finding a "unity of interest," the "most important evidence" was that the 2007 PPA—the very document giving rise to AIU's FCA liability—was signed by CEC's President and CEO, Robert Dowdell, on behalf of AIU, even though Mr.

---

allegations sufficient to support a finding that [affiliated entities] actually submitted a falsely certified cost report, or [were] directly involved in causing such a submission, 'there is simply no actionable damage to the public fisc as required under the False Claims Act.'") (quoting *U.S. ex rel. Clausen v. Lab. Corp.*, 290 F.3d 1301, 1311 (11th Cir. 2002)); *U.S. ex rel. Lawson v. Aegis Therapies, Inc.*, Case No. 210-CV-72, 2013 WL 5816501, at *4 (S.D. Ga. Oct. 29, 2013) ("[T]here are no allegations about how, when, and where Corporate Defendants were involved in the alleged fraudulent activity, who at the companies was involved, and what statements were made. Indeed, the only allegations of misconduct concern the Contractor and the Facility.").

[26] No. 1:08-CV-2277-RWS, 2016 WL 5092513 (N.D. Ga. Sept. 20, 2016); Pl.'s Resp., Doc. No. 42 at 14-15.
[27] *Powell*, 2016 WL 5092513, at *1.
[28] *Id.* at *6.

Dowdell was not an officer of AIU or AIU-University.[29] The court relied on the very same evidence to satisfy the second prong of the veil piercing inquiry, holding that "leaving AIU-University saddled with the baggage of any false claims contained in that PPA [executed by CEC's President] would indeed be inequitable."[30]

*Powell* is easily distinguishable from this case, and Relator's Opposition brief does not point to any allegations in the Amended Complaint that are on par with the "most important" fact in *Powell*—that the president of the parent company signed the very document giving rise to the subsidiary's FCA liability. The Amended Complaint does not allege facts sufficient to support an alter ego theory and should, therefore, be dismissed as to Guardian Pharmacy.[31]

## III.   CONCLUSION

For the foregoing reasons, Guardian Pharmacy requests that its Motion to Dismiss Relator's Complaint be granted.

---

[29] *Id.* at *8.

[30] *Id.* at *9.

[31] *Lawson*, 2013 WL 5816501, at *4-5 (dismissing Government's claims against parent and declining "the Government's invitation to delay ruling on the Defendants' motion so that the Government may obtain the benefit of discovery to find support for its theory"); *Schaengold*, 2014 WL 6908856, at *12-14 (Government's complaint failed to satisfy either the first or second prong of veil-piercing claims); *U.S. v. Universal Health Servs., Inc.*, No. 1:07CV00054, 2010 WL 4323082, at *3-4 (W.D. Va. Oct. 31, 2010) (same); *Hockett*, 498 F. Supp. at 60-62.

Respectfully submitted this 19th day of June, 2020.

                                    ARNALL GOLDEN GREGORY LLP

                                    */s/ W. Jerad Rissler*
                                    W. Jerad Rissler, Esq.
                                    Georgia Bar No. 142024
                                    jerad.rissler@agg.com
                                    Glenn P. Hendrix, Esq.
                                    Georgia Bar No. 346590
                                    glenn.hendrix@agg.com

                                    Arnall Golden Gregory LLP
                                    171 17th Street, Suite 2100
                                    Atlanta, Georgia 30363-1031
                                    404.873.8500 (Telephone)
                                    404.873.8501 (Facsimile)

                                    *Attorneys for Defendant*
                                    *Guardian Pharmacy, LLC*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 19th day of June, 2020.

>                             */s/ W. Jerad Rissler*
>                             W. Jerad Rissler, Esq.
>                             Georgia Bar No. 142024

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, I electronically filed the foregoing **DEFENDANT GUARDIAN PHARMACY, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

>  */s/ W. Jerad Rissler*
>  W. Jerad Rissler
>  Georgia Bar No. 142024

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501