**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* HENRY B. HELLER, <br><br> *Plaintiffs*, <br><br> v. <br><br> GUARDIAN PHARMACY OF ATLANTA, LLC, <br><br> *Defendants*. | **Civil Action File No.: 1:18-cv-03728-SDG** |

## <u>Consent Order for Discovery</u>

To reduce costs and promote efficiency, in keeping with Fᴇᴅ. R. Cɪᴠ. P. 1, and to ensure that discovery in this matter is both proportional and relevant, in keeping with Fᴇᴅ. R. Cɪᴠ. P. 26, the Parties have moved the Court for entry of the following Order to govern the discovery and production of hard copy records and electronically-stored information ("ESI").  This Order does not (a) alter or affect the applicability to this matter of the Federal Rules of Civil Procedure or Local Rules for the U.S. District Court for the Northern District of Georgia or (b) address,

limit, determine or affect the relevance, discoverability, or admissibility as evidence of any hard copy record or ESI, regardless of whether the record or ESI is to be preserved, is preserved, or is produced.

For good cause shown, it is hereby ORDERED as follows:

## I.      General Provisions

A.      **Custodians and sources**. The Parties agree to promptly exchange lists of custodians and identify all sources of information that might contain potentially relevant paper records or ESI (e.g., shared network drives, databases) that they propose searching for potentially responsive information.

B.      **Known Responsive Hard-Copy Records and ESI Must Be Produced**. Responsive hard copy records and ESI that is identifiable, accessible, and retrievable without the use of a search protocol, shall not be withheld for the sole reason that it was not identified as responsive by the search protocol described in, or developed in accordance with, this Order.

## II.     Filtering Methodologies.

A.      The Parties agree that, in order to eliminate unnecessary eDiscovery costs and disputes, it may be necessary to use filtering methodologies to

identify responsive documents. These methodologies may include predictive coding, search terms, date restrictions, file type restrictions, or data source restrictions. Each Party agrees that if it employs a filtering methodology it will disclose that methodology to the other Party in sufficient detail so as to allow the other Party to evaluate the propriety of the chosen methodology.

B.    **Predictive Coding.** If predictive coding is used, the Parties will meet and confer to discuss the methodology and workflow to be employed.

C.    **Search Terms.** Each Party further agrees that if it intends to use search terms, it will: (a) provide the other Party with a copy of the "search term report" generated by the processing or review tool for the search terms it intends to use, (b) consider testing additional search terms, modification of search terms, or other refinements in search strategy proposed by the other Party, and (c) to the extent that a modification or refinement proposed by the other Party is rejected, disclose to the other Party the rationale for the rejection so that the Parties can meaningfully confer in good faith regarding the inclusion of the disputed proposed search. The Parties specifically agree

that any information shared pursuant to this paragraph will not operate as a waiver of the work-product doctrine.

The fact that a search term appears in a stand-alone electronic file or email family shall not prevent any Party from withholding such stand-alone file or email family from production if counsel for that Party determines, in good faith, that the electronic file or email family is either not responsive or is protected from disclosure by a recognized privilege or immunity from discovery. If any part of an email family is responsive, however, the entirety of that email family will be produced, unless the only responsive family member(s) is also privileged or protected, in which case the entire family shall be withheld. If a responsive stand-alone file or email family is responsive, but protected from disclosure by a recognized privilege or immunity from discovery, the Party will list that document or family on a privilege log.

Where appropriate, or upon reasonable request, when applying search terms, Parties should also test the null set to evaluate whether responsive material is unidentified by search terms and would otherwise be excluded from review eligibility. Parties will use random sampling to measure the

responsiveness rate of the null set. The null set sample should use a 95% confidence level and a 5% estimation interval. The results of the review of the null set sample will be shared between the Parties as a means to confirm that search terms are accurate in returning responsive content.

D.    **Date Restriction.** The Parties shall meet and confer to discuss whether the obligations to preserve, review, and produce data should be limited to data or documents that were created or modified within a particular date range or various date ranges depending on custodians/source. The Parties acknowledge that as to particular, well-defined document requests for particular documents or a particular type of document (as opposed to document categories), a Party may reasonably request the production of documents outside of this date range.

E.    **Inaccessible Sources.** Contingent upon each party's compliance with its obligation to take steps to preserve reasonably accessible sources of ESI, including the implementation of a legal hold, the Parties agree that the circumstances of this case do not warrant the preservation, review, or production of the following sources of ESI, which they agree are not reasonably accessible pursuant to FED. R. CIV. P. 26 (b)(2)(B):

1.      Residual, fragmented, damaged, slack, or unallocated data,

2.      Data stored on back-up tapes or drives,

3.      Voicemails, Text messages, Instant messages, or their equivalent—e.g., iMessages, WhatsApp, Slack, etc.

4.      On-line access data—e.g., temporary internet files, history files, cache files, cookies, etc.

5.      Data in metadata fields that are frequently updated automatically, such as last-opened, last-accessed, or last-printed, and

6.      Server, system, network, or software application logs.

The Parties recognize that this list may not be complete and agree to meet and confer in good faith regarding any additional sources that they consider not reasonably accessible.

F.      **Productions as Kept in Usual Course of Business and in Reasonably Usable Form.** The Parties agree that productions made in accordance with Appendix A shall constitute a production made in the usual course of business, pursuant to FED. R. CIV. P. 34(b)(2)(i) and in a reasonably usable form or forms, pursuant to FED. R. CIV. P. 34(b)(2)(E).

G. **Redactions**. If a document must be redacted before production, it shall be redacted and produced in accordance with Appendix A.

H. **Costs**. All costs of collecting, filtering, processing, and production of responsive ESI with the load files as set forth in this protocol will be borne by the Producing Party. However, each Party reserves any right it may have under the Federal Rules of Civil Procedure, statute or other applicable rules or case law to seek cost shifting or apportionment for the costs of electronic discovery.

I. **Production Schedule**. Depending on the volume of the production sets, the Parties acknowledge that rolling productions — *i.e.,* productions in stages as information is able to be retrieved and reviewed — may be required, but such productions should be made expeditiously. The Parties agree to confer in good faith to reach a mutually agreeable production schedule that will allow them to complete production of documents and other data in advance of depositions.  The Parties will endeavor to produce supplemental custodial files at least fourteen (14) days before a scheduled deposition of a witness being represented by counsel for the Party or any

witness whose custodial files are within a Party's possession, custody, or control.

J.      **Use of Documents**. As provided in Appendix A, the Parties agree that certain documents should be produced in native format. Because native productions preclude the producing party from branding every page with Bates numbering, confidentiality designations, or redactions designations, the Parties agree that any time any natively produced document is used, the first page of that document will be the slip-sheet with the document's branding information that is called for by Appendix A.

K.      **Production Media**. The Parties' productions will be made via CD, DVD, external hard drives, or by electronic file share depending on the total data size. The Parties will include the following information in a letter or email to opposing counsel with each production: (a) the style of the case, (b) the date of the production, (c) volume number, and (d) Bates range of documents on the media. The Parties' productions will be made in an encrypted format.

L.      **Gaps**. Productions should contain sequential Bates numbers with no gaps. There should be no gaps in Bates numbers between productions. A

unique production volume number will be used for each production. If any unavoidable gaps occur, the Parties agree to provide advance notice of those gaps within productions and/or between productions.

**III.    ESI Production**. ESI, including email, that is responsive to discovery will be harvested from computer hard drives, servers, or any other medium serving as storage for electronic data and will be produced in the form set forth in Appendix A.

**IV.    Hard-Copy Production.** Paper documents that are responsive to discovery shall be scanned and produced in electronic format in the form set forth in Appendix A.

**V.    Privilege Logs**.

A.    Except as provided below, responsive documents that are withheld from production, due to a redaction in part or in their entirety, shall be identified in a privilege log that complies with the Consent Protective Order.

B.    Attachments do not need to be separately logged. However, a Party, at its option, may choose to log attachments separately.

C.      Subject to an advice of counsel defense, a Party's assertion of which would negate the terms of this paragraph, communications to or from a Party's litigation counsel in the above-captioned matter need not be placed on a privilege log, so long as the communication did not include a third party other than a person within the scope of a privilege.

D.      The Parties agree that emails that contain quotes from other emails in the same email string, as the result of responses and/or forwarding, may be logged by the top-most email in the chain that is withheld or redacted, provided the entire email string is being withheld under a claim of privilege.

**VI.    Non-Party Documents.** Any Party that obtains paper documents or ESI from a non-party via subpoena or FOIA request shall produce a copy of the documents or ESI to all other Parties. A Party issuing a subpoena or FOIA request after this Consent ESI Order has been entered shall include a copy of this Order and the Consent Protective Order with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.  However, the Party in possession of the non-party documents or ESI may produce an exact copy of the non-party's production to all other Parties and is under no obligation to satisfy the production requirements set forth in Appendix A.

**VII.   Modifications to ESI Protocol.** The Parties agree that any of the terms and requirements set forth above or in the Appendix A can be modified by agreement between the Parties reduced to writing and signed by both Parties.

SO ORDERED this 21st day of April 2021.

The Honorable Steven D. Grimberg
United States District Judge

AGREED AND CONSENTED TO BY:   AGREED AND CONSENTED TO BY:


 /s/ Caroline G. McGlamry     /s/ W. Jerad Rissler
Michael J. Moore     Glenn P. Hendrix
Georgia Bar No. 520109    Georgia Bar No. 346590
Charles W. Byrd     W. Jerad Rissler
Georgia Bar No. 100850    Georgia Bar No. 142024
Jay F. Hirsch     David L. Hobson
Georgia Bar No. 357185    Georgia Bar No. 358425
Kimberly J. Johnson    ARNALL GOLDEN GREGORY LLP
Georgia Bar No. 687678    171 17th St. NW, Suite 2100
Caroline G. McGlamry    Atlanta, GA 30363
Georgia Bar No. 230832    Telephone: (404) 873-8500
Elizabeth S. White    Facsimile: (404) 873-8501
Georgia Bar No. 258844    glenn.hendrix.@agg.com
POPE MCGLAMRY    jerad.rissler@agg.com
3391 Peachtreet Road, NE   david.hobson@agg.com
Suite 300
Atlanta, GA 30326    *Attorneys for Defendant*
(404) 523-7706
efile@pmkm.com


Lynn M. Adam
Georgia Bar No. 002319
ADAM LAW LLC
125 Clairemont Avenue
Suite 380
Decatur, GA 30030
(404) 324-3582
ladam@lynnadamlaw.com


*Attorneys for Plaintiff Heller*

## Appendix A – Technical Specifications

### I.    Specifications for the Production of ESI.

ESI produced by either of the Parties should be provided in the following format:

A.    **Production Format**.

1.    All Documents, except those described in Section I.A.2, below, will be produced in TIFF or JPEG format, according to the following protocol:

a)     All Documents, other than those to be produced in Native Format, shall be produced as single-page Group IV TIFF images using at least 300 DPI print setting.

b)    If a Document is produced in TIFF format, but requires color to understand its full meaning and content, the receiving Party may, in good faith, request that the Document be produced in color format. No party may request production of documents in color on a wholesale basis.  The producing Party shall not unreasonably deny such a request.

c)    Hidden text (e.g. track changes, hidden columns, comments, notes, markups, etc.) shall be expanded, extracted and rendered in the TIFF file.  The TIFF or JPEG image must convey the same information as if the Document were produced in paper.

d)    Each image (whether JPEG or TIFF) shall have a unique file name, which is the Bates Number of the Document.

e)    Each image shall be branded with its corresponding Bates Number and Confidentiality Designation, using a con-

sistent font type and size.  The producing Party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

2.     **Native Files.**  Certain file types—for example, Microsoft Excel spreadsheets and Microsoft PowerPoint presentations—can lose significant information and meaning when produced as an image. The Parties have therefore agreed that source code, audio, video, presentation, and spreadsheet-type files, including but not limited to Microsoft Excel or CSV files, will be produced in Native Format. The production of Documents in Native Format shall be subject to the following protocol:

    a)     Any Documents produced in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the Document has been produced in Native Format, and noting the Document's Confidentiality Designation.

    b)     Any Documents produced in Native Format shall be produced with the applicable Metadata fields set forth in Section A(III) below, to the extent such metadata exists.

    c)     Microsoft PowerPoint Documents shall be processed with all hidden slides and speaker notes unhidden.

    d)     For any Document that is not produced in Native Format, and is not adequately represented as an image (*i.e.*, in TIFF or JPEG format), each Party reserves the right to request production in Native Format. The Producing Party shall not unreasonably deny such a request.

B.     **Database Load Files/Cross-Reference Files**.  Documents should be provided with (1) a Concordance delimited file (.DAT) and (2) an Opticon (.OPT) delimited file.

<u>Example of Concordance Delimited File</u> :

þBegDocþ¶þEndDocþ¶þAttachRangeþ¶þCustodianþ¶

The objective coding and/or electronic file metadata should be provided in the following format:

a)   fields should be delimited by the default Concordance field delimiter for ANSI character 20 (¶);

b)   String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (þ);

c)   The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each document;

d)   Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row;

e)   Each return and new line in full text fields shall be marked by the Relativity default delimiter of ANSI character 174 (®);

f)   Multi-values should be separated by a semicolon (;).

<u>Example of Opticon Delimited File</u>:

ABC0000001,ABC001,D:\IMAGES\001\ABC0000001.TIFF,Y,,,3

ABC0000002,ABC001,D:\IMAGES\001\ABC0000002.TIFF,,,,

ABC0000003,ABC001,D:\IMAGES\001\ABC0000003.TIFF,,,,

ABC0000004,ABC001,D:\IMAGES\001\ABC0000004.TIFF,Y,,,2

ABC0000005,ABC001,D:\IMAGES\001\ABC0000005.TIFF,,,,

C.   **Redactions**. Where documents are redacted (in accordance with this Consent Order for Discovery), the ESI items shall be produced in TIFF with the OCR text for the unredacted portion of the document. The redactions

will be made so that the word "redacted" is both visible within the redaction box itself and OCR-searchable. The metadata fields listed below will be provided to the extent they exist and do not also need to be redacted.

If the redacted document is a PowerPoint-type presentation or Excel-type spreadsheet of the type that would lose significant meaning if produced as an image, the Parties will meet and confer on a suitable process for producing the file in a "modified native" format. If the redacted document is an audio or visual file, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the document.

D.      **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent document), to the extent they can be reasonably determined, must be preserved.  The Parties shall maintain responsive, non-privileged family groups and parent-child relationships together in one production volume and shall not break family groups or parent-child relationships apart in separate production volumes.

E.      **Deduplication**. The Parties agree to de-duplicate, using a verifiable process, documents across custodians. This ensures that only one unique copy of a document is produced. For email, deduplication will be performed on the basis of full families only, meaning that emails shall be treated as duplicates only if they are identical in both their bodies and in all their attachments. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. An email attachment will not be treated as a duplicate merely because an identical copy of the document exists as a separate file or is included in a produced, more inclusive email.

The identity of all custodians of a document that has been de-duplicated out of the production set will be listed in the "DupCustodian" production field.

Multiple custodians in the Custodian field will be separated with a semicolon.

ESI duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only. Removal of near-duplicates is not acceptable.

F.    **De-NIST**. To reduce the number of irrelevant files in their respective data collections, each party may remove files from the document set to the extent those files have hash values that match those file hashes appearing on the National Software Reference Library list, maintained by the National Institute of Standards and Technology. This process is commonly referred to as "deNISTing." Each party agrees that, to the extent that it does deNIST its data, it will do so using a verifiable process and may do so before any data reaches the review stage.

G.    **Metadata Fields**. The metadata fields listed below will be provided if they exist.

Parties understand that there may be instances in which the Custodian may be the name of a source (e.g., the name of the database), as opposed to a person's name.

H.    **Databases**. Certain types of databases are dynamic in nature and will often contain information that is not relevant. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. If possible, these reports or data tables will be produced in sortable and manipulable format, such as a .CSV or .XLS file. If the relevant and responsive reports or data tables derived from a database were also maintained in static form (e.g., as a PDF attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper.

The Parties agree to identify the specific databases, by name and platform or engine (e.g., Oracle, SQL, etc.), that may contain responsive information.

I.  **Extracted Text**. Along with the native file or TIFF file for each ESI document, the producing party shall also provide the extracted text, or, if extracted text is not available then OCR text along with a Control List file to facilitate exporting. Separate .TXT files will be organized at the document level and named with the corresponding production file name. The path to the text file will be included in the load file.

J.  **Time Zone.** All email files shall be processed using the Eastern Standard Time zone.

II.  **Specifications for the Production of Hard Copy Documents.**

A.  Hard-copy documents produced by either of the Parties should be provided in the following format:

    1.  **TIFFs.** Single page 300dpi CCITT Group IV black and white TIFFs should be provided with page breaks at document end.

    2.  **Color**. The Parties will accommodate reasonable requests for the production of specific images in color.

    3.  **Unique IDs**. Each image should have a unique file name that will be the Bates number of that page. The Bates number must appear on the face of the image in the lower right corner (e.g., ABC0000001).

    4.  **OCR**. Parties will provide OCR for all hard copy documents produced.

B.  **Unitizing of Documents**. When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

C.  **Database Load Files/Cross-Reference Files**. Documents should be provided with (1) a Concordance delimited file and (2) an Opticon delimited file.

Example of Concordance Delimited File :
þBegDocþ¶þEndDocþ¶þAttachRangeþ¶þCustodianþ¶

The objective coding and/or electronic file metadata should be provided in the following format:

1.  fields should be delimited by the default Relativity field delimiter for ANSI character 20 (¶);

2.  String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (þ);

3.  The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each document;

4.  Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row;

5.  Each return and new line in full text fields shall be marked by the Relativity default delimiter of ANSI character 174 (®);

6.  Multi-values should be separated by a semicolon (;).

Example of Opticon Delimited File:
ABC0000001,ABC001,D:\IMAGES\001\ABC0000001.TIFF,Y,,,3
ABC0000002,ABC001,D:\IMAGES\001\ABC0000002.TIFF,,,,
ABC0000003,ABC001,D:\IMAGES\001\ABC0000003.TIFF,,,,
ABC0000004,ABC001,D:\IMAGES\001\ABC0000004.TIFF,Y,,,2
ABC0000005,ABC001,D:\IMAGES\001\ABC0000005.TIFF,,,,

D.  **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent document), to the extent they can be reasonably determined, must be preserved.  The Parties shall maintain responsive, non-privileged family groups and parent-child relationships together in one production volume and shall not break family groups or parent-child relationships apart in separate production volumes.

E.   **Objective Coding Fields**.   The following objective coding fields should be provided to the extent determinable: (i) Beginning Bates Number; (ii) Ending Bates Number; (iii) Beginning Attachment Number; (iv) Ending Attachment Number; (v) Attachment Range Bates Numbers; and (vi) Custodian.

## III.   Metadata Fields

The database load files for all productions shall contain the following fields:

| Field Name | Description/ Comments | Fields for ESI and/ or Hard Copy |
|---|---|---|
| BEG_NO | Bates number associated with the first page of a document. | ESI and Hard Copy |
| END_NO | Bates number associated with the last page of a document. | ESI and Hard Copy |
| CUSTODIAN | Specific description of who provided the document. Multiple custodians will be separated by a semi-colon. | ESI and Hard Copy |
| BEG_ATTACH | Beginning Attachment number for parent and children. The number should be BEG_NO of the parent. | ESI and Hard Copy |
| END_ATTACH | Ending Attachment number for parent and children. The number should be END_NO of the last child. | ESI and Hard Copy |
| ATTACH_RANGE | Beginning and Ending Attachment numbers for parent and children. The number should be BEG_NO of the parent and END_NO for the last Child. | ESI and Hard Copy |

| PROD_TYPE | Paper or ESI should be noted in this field. This field defines whether the produced document was produced from Paper or from ESI. | ESI and Hard Copy |
|---|---|---|
| REDACT | Y or N will be noted in this field. This field defines whether or not a document contains redactions or not. | ESI and Hard Copy |
| CONFIDENTIAL | Y or N will be noted in this field. This field defines whether or not a document has been designated as "Confidential." | ESI and Hard Copy |
| FILE_EXT | File extension of native file (e.g.,  XLS, DOC ) | ESI |
| FILE_NAME | Original file name of native file. Contains subject of email message for email records. | ESI |
| PAGE_COUNT | Number of pages per electronic document. NOTE: Not all ESI documents have this field. To the extent it exists, it is extracted. This is an electronically populated field that is based on the machine's estimate. | ESI |
| HASH | The Hash value or "de-duplication key" assigned to a document.  Parties will use MD5 or SHA1 Hash value for this unique identifier. PID's for email families should also be preserved. | ESI |
| NATIVE_LINK | Full relative path to the current location of the native or near-native document | ESI |
| FILE_PATH | Folder path of where documents came from on server – when collected. Include the letter of the drive, path information through to the extension of the file, if possible. | ESI |

| | | |
|---|---|---|
| TITLE | Title of document.<br>NOTE: Not all ESI have this field. Certain of the attached email docs, like a scanned PDF, will not have any metadata | ESI |
| AUTHOR | Author of a document.<br>NOTE: Not all ESI have this field. Certain of the attached email docs, like a scanned PDF, will not have any meta data | ESI |
| CREATE_DATE | Creation date of the native file.  Must be in mm/dd/yyyy format. | ESI |
| TIME_CREATED | Creation time of the native file. | ESI |
| DATE_LAST_MOD | Date native file was last modified.<br>Needs to be in mm/dd/yyyy format | ESI |
| TIME_LAST_MOD | Time native file was last modified. | ESI |
| DUPCUSTODIAN | Custodian names for duplicate files. | ESI |
| FULLTEXTPATH | The path of the full text files for each document | ESI |
| MASTER_SENT | For e-mail messages, this field is populated with the received date for the parent. For loose edocs, this field is populated with the date last modified. | ESI |
| MESSAGID | The Email Message ID. | ESI (email) |
| SUBJECT | Information from the Subject line of the e-mail message | ESI (email) |

| | | |
|---|---|---|
| FROM | Author of e-mail message | ESI (email) |
| TO | Recipients of the email message | ESI (email) |
| CC | Recipient of Carbon Copies of the e-mail message | ESI (email) |
| BCC | Recipient of blind carbon copies of the e-mail message | ESI (email) |
| DATE_SENT | Sent date of an e-mail message.  Must be in mm/dd/yyyy format. | ESI (email) |
| TIME_SENT | Sent time of an e-mail message. | ESI (email) |
| DATE_RCVD | Received date of an e-mail message. Needs to be in mm/dd/yyyy format | ESI (email) |
| TIME_RCVD | Received time of an e-mail message. | ESI (email) |