IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* HENRY B. HELLER,<br><br>  *Plaintiff,*<br><br>v.<br><br>GUARDIAN PHARMACY OF ATLANTA, LLC,<br><br>  *Defendant.* | Civil Action File No.:<br><br>1:18-cv-03728-SDG |

**DEFENDANT'S RESPONSE TO STATEMENT OF INTEREST
OF THE UNITED STATES OF AMERICA**

Guardian's arguments on summary judgment do not require the Court to take a position contrary to the Government on any of the three legal points raised by the Government's Statement of Interest (Dkt. No. 198) ("Statement"). And despite the Government's "strong interest in the proper interpretation of other federal laws, including the Anti-Kickback Statute" (Statement at 2), the Government offers no support to Relator on pivotal issues relating to the Relator's application of the AKS. The Government's Statement does not address any of the evidence; indeed, the Government made clear that it takes no position on the facts. (*See* Statement at 10 ("Except as to the legal positions [in the

1

Statement], the United States does not take a position on the parties' summary judgment briefing at this time.").) The Statement contains nothing to change the fact that Relator has adduced no proof of a knowing and willful AKS violation. Nor does any case the Government cites support Relator's claims. Guardian's motion for summary judgment should therefore be granted for the reasons given in its briefs.

***(1) Relator has no proof that "any purpose" of Guardian's conduct was to induce referrals.*** The Government asserts that "the 'one purpose' rule remains the correct standard." (Statement at 3.) While the Eleventh Circuit has not adopted (or rejected) the "one purpose" test (and the Government does not argue to the contrary), Guardian's argument does not require the Court to reject the "one purpose" test. Rather, Guardian argues that "*Relator's version* of the 'one purpose' rule is not supported by the case law." (Dkt. No. 178 at 20-23 (emphasis added); *see also* Dkt. No. 192 at 14-15.) The Government does not address the cases on which Guardian primarily relies for rejecting Relator's attempted unprecedented expansion of the "one purpose" test.[1] And the cases the Government cites do not

---

[1] These cases include *Bingham v. HCA, Inc.*, 783 F. App'x 868 (11th Cir. 2019), *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 663 Fed. App'x 368 (5th Cir. 2016), *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622 (N.D. Ill. 2006), *U.S. ex rel. Suarez v. AbbVie Inc.*, 2019 WL 4749967 (N.D. Ill. Sept. 30, 2019), *U.S. ex rel. Forney v.*

support Relator's attempt to treat as "remuneration"[2] and "inducements" legitimate and commercially reasonable practices tied to the safety of the medications it has dispensed, particularly in the absence of direct evidence of an intent to induce.

The remuneration in *Fesenmaier* was expensive trips on private planes,[3] which of course, is nothing like the services at issue here. Even so, and despite the obvious marketing value of giving those trips to the physicians, as well as the lack of any connection between those trips and the physicians' services, the court found there was a question of fact as to whether even one purpose of the gift of expensive trips to referring physicians was to induce referrals.[4] *Fesenmaier* has little applicability to the facts of this case.

---

*Medtronic, Inc.*, 2017 WL 2653568 (E.D. Pa. June 19, 2017). (Dkt. No. 178 at 20-23; Dkt. No. 192 at 14-15.)

[2] The Statement notably takes no position on whether Guardian's practices are remuneration, the requirements of Guardian's contracts with Medicare payors, or the relevance of industry standard, fair market value, and commercial reasonableness of practices in determining issues of remuneration, inducement, and AKS scienter.

[3] *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.,* No. 13-cv-3003-WMW-DTS, 2021 WL 101193, at *3-7 (D. Minn. Jan. 12, 2021).

[4] *Id.* at 8-9.

The remuneration in the *Arnstein* case was payments made in the form of speaker fees to physicians who prescribed Teva's drugs.[5] Unlike Guardian's services at issue here (which relate solely to the safety of the drugs that Guardian dispenses), the purpose of the speaker program is *marketing* to increase the use of Teva's drugs.[6] These speaker fees are nothing like Guardian's services:

> Absent certain safeguards, being paid to speak on behalf of a pharmaceutical company can be seen as an unlawful bribe or kickback. . . . Speakers may receive thousands of dollars in speaker fees or honoraria. . . . Speakers are also reimbursed for airfare, hotel rooms, meals, and alcohol. . . . Speakers who are starting or growing their own private or hospital-based practices may view the speaker programs as well-subsidized marketing events, which can increase both peer referrals and patient self-referrals, thereby expanding their patient base.[7]

In addressing the relevance of "*quid pro quo*" evidence, while the court held such evidence was not necessary under the facts and circumstances there, it also suggested that such evidence *would* be necessary in a case like this one:

> As the *McClatchey* court explained, a payor "may *lawfully* enter into a business relationship with a doctor and even hope for or expect referrals from that doctor, so long as [the payor] is motivated to enter the relationship *for legal reasons entirely distinct* from its

---

[5] *United States ex rel. Arnstein v. Teva Pharmaceuticals USA, Inc.*, No. 13 Civ. 3702 (CM), 2019 WL 1245656, at *1-4 (S.D.N.Y. Feb. 27, 2019).
[6] *Id.* at *2 ("Speaker programs are a commonly-used marketing tool in which pharmaceutical companies pay health care providers (doctors, nurse practitioners, *etc.*), to speak about their drugs and/or the diseases the drugs treat.")
[7] *Id.* at *3

collateral hope for referrals." [*United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000)] (emphasis added). Thus, in a case where all facets of the business arrangements between a payor and doctor are aboveboard, **the jury might require evidence of a *quid pro quo* to enable it to make the "difficult factual determination" of "distinguish[ing] between a motivating factor and a collateral hope or expectation."** *Id.* n.7.[8]

Because Relator, unlike the relator in *Arnstein*, has not "proffered . . . indicia of an unlawful relationship between [Guardian] and [ALFs]," such *quid pro quo* evidence *is* necessary.[9]

Further, even under the "one purpose" test, it remains Relator's burden to prove that Guardian offered or gave remuneration, in whole or in part, for an unlawful, criminal purpose—namely, to buy referrals. He must present evidence that "tends to meaningfully exclude a legitimate (or negligent) explanation for [Guardian's] conduct—consistent with the heightened scienter requirement imposed by a `knowing and willfully' standard."[10] As Guardian's briefing demonstrates, Relator cannot meet this burden in the face of unrebutted testimony and a mountain of evidence that Guardian's practices were legitimate,

---

[8] *Id.* at *10 (bold emphasis added).
[9] *Id.*
[10] *Klaczak*, 458 F. Supp. 2d at 677; *id.* at 681 ("[G]iven that they have failed to adduce direct evidence of knowledge or willfulness, Relators have sought to prove their case through circumstantial evidence. This . . . mean[s] . . . in the context of a statute with the heightened *mens rea* requirement of knowingly and willfully, that Relators circumstantial proof must at least meaningfully discredit other, valid justifications for the contracts.").

commercially reasonable, and undertaken for the purpose of meeting its own obligations to its patients with respect to the drugs it dispenses to them. Nothing in the Government's Statement suggests that the "one purpose" rule it advocates relieves Relator from this burden or that it believes Relator has met this burden.

*(2)* *Relator's attempt to prove scienter in the absence of authoritative guidance that would have warned Guardian away from a reasonable interpretation of its legal obligations fails under* **Phalp,**[11] *just as it fails under* **Olhausen.**[12] The Government posits "that *Phalp* articulates the correct standard for evaluating scienter in FCA actions." (Statement at 4-5.)[13] It further argues in a footnote that the *Olhausen* panel "did not explain its basis for disregarding *Phalp*, nor did it properly apply the *Safeco*[14] test since it did not consider whether there was authoritative guidance that warned defendant away from its interpretation." (*Id.* at 5, n.1.) The Government's assertion that *Olhausen* "disregard[ed]" *Phalp* or is in any way contrary to *Phalp* is incorrect for the reasons discussed in Guardian's Reply Brief in Support of its Motion for Summary Judgment (Dkt.

---

[11] *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017).
[12] *Olhausen v. Arriva Medical, LLC,* No. 21-10366, 2022 WL 1203023 (11th Cir. Apr. 22, 2022).
[13] Notably, the Government offers no position on the issue of AKS scienter or on whether the materials on which Relator relies constitute authoritative guidance that should have warned Guardian away from any of its practices.
[14] *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007).

192 at 18, n.60.) Specifically, *Olhausen* cited *Phalp* in the very paragraph where it applied *Safeco*.[15] It also quoted the portion of *Safeco* explaining that only "[w]here 'the statutory text *and relevant court and agency guidance* allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.'"[16] That statement of the law is entirely consistent with *Phalp*. Moreover, the Government's criticism of *Olhausen*—that "it did not consider whether there was authoritative guidance that warned defendant away from its interpretation" (Statement at 5, n.1)—is of no help to Relator because he has identified no such authoritative guidance. (Dkt. 154-1 at 30-37.)[17] And *Phalp* is similarly of no help to Relator because it also demands proof of "actual knowledge of a different authoritative interpretation" for a plaintiff to avoid summary judgment on the issue of scienter in the face of a reasonable interpretation of ambiguous law.[18] In

---

[15] 2022 WL 1203023, at *2.

[16] *Id.* (quoting *Safeco*, 551 U.S. at 70, n.20).

[17] There is no indication in the Eleventh Circuit's opinion that the relator alleged any facts supporting the existence of any such authoritative guidance, so the Government's criticism here is not clear. To the extent that the Government takes issue with the resolution of that issue at the pleading stage (before relator had an opportunity to discover whether there was such authoritative guidance), such a concern is not an issue here. Relator has had ample opportunity to develop and present evidence of any authoritative guidance but has failed to do so.

[18] *Phalp*, 857 F.3d at 1154.

fact, in *Phalp*, the Eleventh Circuit ultimately affirmed summary judgment *against* the relator for failure to provide proof of such an authoritative interpretation.[19] Accordingly, even if this Court considered only *Phalp* and disregarded *Olhausen*, Relator's claims still fail because, like the relator in *Phalp*, he presents no evidence that Guardian had "actual knowledge of a different authoritative interpretation" or, indeed, of the very existence of any such "authoritative interpretation" warning Guardian and the rest of the ALF and LTCP industry that their practices violate the law.

(3) *Relator cannot meet the causation standard that the Government advocates.* The Government argues that the Court should not apply a "but-for" causation standard, but should instead apply a line of cases requiring "that the government must only establish a 'link' between the claim and the AKS violation to show falsity." (Statement at 5-9.) While Guardian noted that the Eleventh Circuit has not decided the correct causation standard since the "resulting from" language was added to the Anti-Kickback Statute, Guardian argued that "this Court need not decide which standard applies because Relator has not shown *any* causal link." (Dkt. 178 at 36; *see id.* at 35-38; Dkt. 154-1 at 37-39; Dkt. 192 at 20.) Nothing in the Government's Statement supports the notion that Relator can

---

[19] *Id.* at 1154-55.

establish causation even under the most lenient standard in the face of unrebutted testimony that Guardian's practices played no role whatsoever in any ALF's designation of Guardian as a preferred pharmacy.

Guardian's Motion for Summary Judgment should be granted.

Respectfully submitted this 31st day of January, 2023.

                                                ARNALL GOLDEN GREGORY LLP

                                                */s/ Glenn P. Hendrix*
                                                Glenn P. Hendrix, GA Bar No. 346590
                                                glenn.hendrix@agg.com
                                                W. Jerad Rissler, GA Bar No. 142024
                                                jerad.rissler@agg.com
                                                David L. Hobson, GA Bar No. 358425
                                                david.hobson@agg.com

                                                171 17th Street, Suite 2100
                                                Atlanta, Georgia 30363-1031
                                                404.873.8500

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

This 31st day of January, 2023.